# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | |
|---|---|
| TRACY LYNN COPE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )        No.  2:15-CV-93-JRG-MCLC |
| | ) |
| TONY PARKER, Warden[1], | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Tracy Lynn Cope ("Petitioner"), an inmate at the Northeast Correctional Complex, brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to a 2007 judgment issued by the Sullivan County Criminal Court [Doc. 1].  Respondent filed a response in opposition thereto [Doc. 8], as well as a copy of the state record [Doc. 9].        Petitioner also filed a motion seeking the status of his case [Doc. 18].  For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, Petitioner's status motion [Doc. 18] will be **DENIED as moot**, and this action will be **DISMISSED**.

## I.        PROCEDURAL HISTORY

On May 2, 2007, after a jury trial, Petitioner was convicted of one count of especially aggravated kidnapping, one count of aggravated kidnaping, and one count of false imprisonment [Doc. 9-1 at 10–12].    Then, on June 27, 2007, Petitioner was sentenced to forty years'

---

[1] As Petitioner is now incarcerated at the Northeast Correctional Complex, the proper Respondent is Warden Randy Lee.  Accordingly, the Clerk is **DIRECTED** to substitute Randy Lee as Respondent in this matter.

imprisonment for the especially aggravated kidnapping charge, twenty years' imprisonment for the aggravated kidnapping charge, and eleven months and twenty-nine days imprisonment for the false imprisonment charge [*Id.*]. The sentences were ordered to run concurrently for a total effective sentence of forty years' imprisonment [*Id.*]. The judgment was affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"), and the Tennessee Supreme Court ("TSC") then denied Petitioner permission to appeal. *State v. Tracy Lynn Cope*, No. E2009-00435-CCA-R3-CD, 2010 WL 2025469 (Tenn. Crim. App. May 20, 2010), *perm. app. denied* (Tenn. Sept. 22, 2010).

On April 11, 2011, Petitioner filed his first petition for post-conviction relief pursuant to Tennessee Code Annotated § 40-30-101, *et seq.*, in the Sullivan County Criminal Court [Doc. 9-11 at 3–13]. However, the Sullivan County Criminal Court summarily dismissed the petition without a hearing on May 2, 2011 [*Id.* at 14–17]. The TCCA affirmed this dismissal on September 11, 2012 [Doc. 9-15 at 1].[2]

Petitioner then filed a petition for a writ of error coram nobis in the Sullivan County Criminal Court on April 15, 2013 [Doc. 9-17]. The Sullivan County Criminal Court dismissed the petition for a writ of error coram nobis on October 1, 2013 [Doc. 9-18 p. 153–57]. The TCCA affirmed the dismissal of the petition on August 21, 2014, and the TSC then denied Petitioner's

---

[2] Subsequently, on February 7, 2013, Petitioner filed a motion for consideration of post-judgment facts in the TSC pursuant to Rules 14 and 22 of the Tennessee Rules of Appellate Procedure, claiming that the State had not disclosed that Ms. Callahan, who testified at Petitioner's trial, was working for the State as a confidential informant in another case. *See Tracy L. Cope v. State*, No. E2013-02590-CCA-R3-ECN, 2014 WL 4161480, at *3 (Tenn. Crim. App. Aug. 21, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015) (detailing Petitioner's post-conviction filings). The TSC denied Petitioner's request for a rehearing. *Id.* Petitioner then filed a second petition for post-conviction relief on March 15, 2013, which the Sullivan County Criminal Court again summarily dismissed, and the TCCA affirmed the post-conviction court's judgment. *Tracy L. Cope v. State*, No. E2013-2002-CCA-R3-PC (Tenn. Crim. App. at Knoxville, Mar. 10, 2014).

Rule 11 application [Doc. 9–22]; *see Tracy L. Cope v. State*, No. E2013-02590-CCA-R3-ECN, 2014 WL 4161480, at *8 (Tenn. Crim. App. Aug. 21, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015).

On April 17, 2015, Petitioner filed the instant petition for a writ of habeas corpus in this Court [Doc. 1]. Respondent thereafter filed a response to the petition, arguing that Petitioner's claims were all procedurally defaulted or without merit [Doc. 8]. This matter is now ripe for the Court's review.

## II.    BACKGROUND

The following factual background is taken from the TCCA's opinion on Petitioner's direct appeal of his conviction:

> The defendant in this case was convicted of kidnapping Amanda Wilson and Debbie Callahan. The victim, who was the defendant's girlfriend, arrived home to find him engaged in sexual relations with a third woman, Jakia Ford. The victim told the defendant to gather his things and leave. She recalled that the defendant became angry and started to scream and yell. She testified that he had been smoking cocaine and had not slept in three days. He repeatedly said that there was someone in the apartment and that the women were trying to kill him. She said he picked up the box springs and opened the closet doors. She said that both women attempted to leave the apartment, but the defendant would not allow them to leave. He said he was going to "get" them before they got him.
>
> The defendant forced both women into Wilson's van. He held Ms. Ford by the waist and Wilson by her shirt. Wilson said they did not resist or try to run away because she knew what the defendant could do. She testified that she was afraid because she knew she could not run away from the defendant. Once inside the van, the defendant locked the doors and drove through downtown Kingsport. Wilson testified that the defendant did not speak to the women, but he talked to himself. He said, "Damn, Tracy, look[ ] what you've done. You just need to take them out to the country and tie them up to a tree." He drove them to a public housing apartment complex in Kingsport where he forced them into an apartment. He told the man in the apartment that he had "taken" the women and that they needed to "pay the price" for trying to kill him. The defendant then forced the women back out to the van. Although the defendant stopped the van later and allowed Ms. Ford to leave, the victim testified that Ms. Ford appeared to be afraid the entire time.

The defendant then drove to another apartment complex and forced Wilson out of the van. He knocked on a door where Debbie Callahan, the second victim, answered. The defendant grabbed both women and made them sit on the floor. He accused them of trying to kill him. Wilson thought he was even angrier and more agitated than when she first saw him in their apartment earlier that evening.

The defendant forced Wilson to remove her clothes, and he was holding both women until Wilson tried to resist. At that point, Ms. Callahan was able to escape and ran out the front door. The police were called during the struggle, and Wilson could see a uniformed officer and his car outside the apartment door. The defendant screamed that the officer was not really the police. The defendant put Wilson in a choke hold from behind. He eventually walked out of the apartment but continued to hold Wilson by her throat. The defendant held her between him and the officer. He eventually let go of Wilson and lay on the ground as instructed by the officers.

Ms. Callahan, the second victim, testified that she lived in an apartment in Sullivan County and that she had met the defendant one day when they smoked crack in her apartment. She recalled that the defendant knocked on her door in the early morning hours of August 29, 2005. The defendant asked her if she wanted to buy some crack, but she told him she had no money. He asked to come in anyway, and they started to smoke some crack. She recalled that the defendant began to act strangely and became rough and mean toward her. He began grabbing at her in an attempt to have sex with her. She said he also wanted her to have sex with his girlfriend who was in the car.

Callahan went to the door and screamed for Wilson to come inside because the defendant was getting out of control. The defendant removed Wilson's clothes and also attempted to remove Callahan's clothes. She said that he grabbed her by her hair, shirt, and pants, but she did not want him to touch her. He told her that, if she tried to set him up, he would fix her so nobody would ever look at her again. She testified that she was afraid then and was still afraid at trial. She said that when she freed herself, she ran from the apartment and hid under a tree for a couple of hours.

Officer Jason McClain testified that he was a patrolman with the Kingsport Police Department when he was dispatched to Callahan's apartment. He arrived around 4:45 a.m. to find the defendant and Callahan inside the apartment. The door was open, and he heard a man's voice yelling, "Call 911, call 911, I want police here now, call 911." He looked inside and saw the defendant screaming as he held Callahan in a choke hold. She was crying, shaking, and appeared to be very frightened. The officer identified himself as the police and asked, "What's going on here, I am the police."

The officer testified that he could see something on or in the defendant's hand, which he was holding behind Callahan. It turned out to be a cast on the defendant's hand but, at the time, the officer was unable to determine if it was a weapon. The officer testified that he took cover behind the doorframe, called for backup, and

waited for additional officers. The defendant continued to hold Callahan in a choke hold. When backup officers arrived, they ordered the defendant to come out of the apartment. The defendant still had Callahan in a choke hold when he came outside and held her body between himself and the officers. He released her when the officers ordered him to the ground.

The officer testified that four to five minutes elapsed between his arrival until the defendant was on the ground outside the apartment. He estimated that the defendant held Callahan "just a minute" at the door to the apartment. The officer did not have his weapon drawn when he first saw the defendant through the apartment door, but his weapon was drawn when the defendant exited the apartment.

During the hearing on the motion for new trial, Jakia Ford testified that she was the woman with the defendant when Wilson arrived home from work. She said that she was willing to testify at trial that the defendant did not force her or Wilson into the vehicle. She said that she spoke with the defendant's trial counsel and repeated her willingness to testify on the defendant's behalf. She testified that she gave counsel her telephone number but was not contacted prior to trial.

The defendant testified that he spoke with trial counsel twice before trial. He said that trial counsel did not advise him that he could get a forty-year sentence at trial. He chose not to testify because he was told by someone that his entire criminal history could be used against him if he testified. He said that his entire record had been put into evidence during a bond reinstatement hearing and that he was "under the assumption" it could be used at trial. He did not discuss this assumption with trial counsel. He said that trial counsel told him that he had been unable to locate Ms. Ford before trial.

The defendant's trial counsel testified that, at the time of the hearing, he had been a public defender for more than eighteen years and also had experience in private practice. He said that the State made an offer for an effective sentence of twelve years at one-hundred percent. He said that he met with the defendant "quite a bit more than two" times before trial. He discussed sentencing with the defendant, including the possibility of consecutive sentences. He also discussed the possibility of a portion of the defendant's prior record being used at trial to impeach him if he decided to testify. He did not recall telling the defendant that his entire record could be used. He recalled that the defendant brought Ms. Ford to his office, and he told trial counsel that she would testify. The defendant told him he would keep her "happy" until she testified. Counsel said that he did not have a telephone number for Ms. Ford but attempted to locate her for trial. Ms. Ford's grandmother told him that she did not know where Ms. Ford was. He also tried to locate her through her probation officer but was told that Ms. Ford was not reporting.

*State v. Cope*, 2010 WL 2025469, at *1–3.

## III.   STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).

For any claims that have been adjudicated on the merits by the state court, however, federal courts must utilize a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 88–89 (2011). Under the AEDPA, a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if

"the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The standards set forth in the AEDPA are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)); *see also Harrington*, 562 U.S. at 102 ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be."). Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## IV. ANALYSIS

Petitioner sets forth the following claims for relief in his habeas petition:

1. Whether the trial court erred in allowing Amanda Wilson to testify that Petitioner broke his hand by hitting her in the face;

2. Whether Petitioner was denied the effective assistance of counsel at trial when his counsel failed to adequately investigate and procure the attendance of Jakia Ford at trial;

3. Whether the evidence was sufficient to sustain Petitioner's convictions; and

4. Whether Petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated by the failure of the State to disclose that one of victims, Debbie Callahan, later served as a confidential informant.

[Doc. 1 at 5–10]; [Doc. 1-1 at 6–20]. The Court will address each claim applying the above standards.

### A. Due Process Claim

Petitioner claims that the trial court erred in allowing Amanda Wilson to testify that Petitioner broke his hand by hitting her in the face several weeks before the alleged kidnapping

[Doc. 1 at 5]; [Doc. 1-1 at 6–11]. Further, Petitioner contends that the "state's application of the law (rule) under the circumstances 'contradicts Supreme Court precedent,'" as the evidentiary ruling was "so egregious that it result[ed] in a denial of fundamental fairness" [Doc. 1-1 at 8 (citing *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003))]. Respondent argues that Petitioner's claim is procedurally defaulted because it was presented solely under a state law theory on direct appeal in state court [Doc. 8 at 7 (citing *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996))].

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citing *Collier v. Lafler,* 419 F. App'x 555, 558 (6th Cir. 2011); *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001)). Thus, to the extent Petitioner claims that the state court violated Tennessee evidentiary rules and case law, he does not state a cognizable basis for granting habeas relief. *See Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) ("[A] state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief.").

However, "[a] federal court may nevertheless grant relief in cases where 'the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation.'" *Moreland*, 699 F.3d at 923 (6th Cir. 2012) (citing *Collier*, 419 F. App'x at 558). A petitioner asserts a reviewable habeas claim where he argues that "particular evidence was so prejudicial that its admission nonetheless rendered his entire trial fundamentally unfair, which denied him due process under the Fifth and Fourteenth Amendments." *Bey*, 500 F.3d at 519–20.

Respondent contends that Petitioner did not fully and fairly present such a federal claim to the state courts [Doc. 8 at 7]. A state prisoner challenging the constitutionality of his conviction pursuant to 28 U.S.C. § 2254 must first exhaust all available remedies in state court before

presenting his claims to a federal court for review. 28 U.S.C. § 2254(b)(1)(A). Under this exhaustion requirement, "[t]o be eligible for habeas relief on any given claim, a state prisoner first must fully and fairly present his claim, as a matter of federal law, to state courts." *Stanford v. Parker,* 266 F.3d 442, 451 (6th Cir. 2001). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *see, e.g.*, *Hicks v. Straub,* 377 F.3d 538, 552 (6th Cir. 2004) (holding the petitioner must present to the state court both the factual and legal basis for his federal claims), *abrogated on other grounds by Guilmette v. Howes,* 624 F.3d 286 (6th Cir. 2010); *see also Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.").

"Where a petitioner has not fully and fairly presented a federal claim to the state's highest court . . . a federal court ordinarily will not consider the merits of that claim unless the petitioner can show cause to excuse his failure to present the claims appropriately in state court, and actual prejudice as a result." *Stanford,* 266 F.3d at 451. The only exception is where "a petitioner submits new and reliable evidence that a constitutional violation has probably resulted in the conviction of an innocent individual." *Id.* Ultimately, if the petitioner fails to exhaust a claim in state court, and no further state remedy is available, that claim is procedurally defaulted and cannot be raised in a federal habeas petition. *Gray v. Netherland,* 518 U.S. 152, 161 (1996).

To determine whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether: (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the

constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *See Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)), *abrogated on other grounds by Guilmette v. Howes,* 624 F.3d 286 (6th Cir. 2010).

After reviewing Petitioner's appellate brief, the Court finds that he did not present this claim to the state court as a federal constitutional issue. In his brief submitted on direct appeal to the TCCA, Petitioner claims that "the trial court did not substantially comply with the requisite procedures in [Tennessee Rule of Evidence] Rule 404," that "there was not clear and convincing evidence that [Petitioner] had previously broken his hand by hitting Ms. Wilson in the face," and that "the court erred in finding that the probative value outweighed the prejudicial effect" [Doc. 9-7 at 30–35]. Petitioner argued that trial court's evidentiary ruling violated state evidentiary law, and failed to cite any federal cases or state cases employing the federal constitutional analysis in question [*See id.*]. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans*, 228 F.3d at 681 (internal citations omitted).

Additionally, in order "[t]o show a due process violation under AEDPA rooted in an evidentiary ruling," the Sixth Circuit "has typically required a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citing *Collier v. Lafler,* 419 F. App'x 555, 558 (6th Cir. 2011)). Petitioner fails to state any Supreme Court authority holding that the admission of prior bad acts evidence violates due process, and, in fact, the Sixth Circuit has noted that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting

propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007); *Martin v. Beckstrom*, No. 12-83-KSFL, 2013 WL 3192895, at *1 (E.D. Ky. June 21, 2013) (holding admission of "testimony of two additional alleged victims regarding other uncharged criminal acts" was not a basis for a federal due process claim where petitioner "failed to point to any Supreme Court authority holding that the admission of prior bad acts evidence violates due process or that the prior bad acts evidence admitted was so unfairly prejudicial that it rendered his trial fundamentally unfair or flawed"). Thus, Petitioner did not fully and fairly present a federal constitutional claim to the state court with respect to the admission of other bad acts evidence.

If a § 2254 petitioner failed to raise a claim on appeal and thereby violated a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Petitioner failed to fairly present his potential due process claim as a federal constitutional claim to the TCCA on direct appeal, and, as such, is now precluding from returning to the state courts to pursue it. Respondent correctly states that this claim is procedurally defaulted due to the "one petition" limitation of Tennessee Code Annotated § 40–30–102(c) [Doc. 8 p. 7–8]. Further, Petitioner has not attempted to show cause for failing to present this claim to the state courts.

Finally, Petitioner cannot establish "actual innocence" as an exception to the procedural default rule. The Supreme Court has held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). However, "actual innocence"

is an extremely narrow exception, and "claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Accordingly, because this claim has been procedurally defaulted, and Petitioner cannot establish cause, Petitioner's due process claim that the trial court erred in admitting evidence of his prior bad acts will be **DISMISSED**.

### B.      Ineffective Assistance of Counsel Claim

Petitioner also claims that he received ineffective assistance of counsel when his trial counsel "failed to adequately investigate and procure the attendance of Jakia Ford[,] as he only started attempting to locate Ms. Ford the day before trial" [Doc. 1-1 at 12]. Petitioner alleges that the testimony of his trial counsel and Jakia Ford at the motion for new trial hearing demonstrates that "[t]he decision of the Tennessee Court of Criminal Appeals . . . amounted to a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State trial" [*Id.* at 18]. Further, Petitioner contends that trial counsel thus "failed to subject the prosecution's case to meaningful adversarial testing" [*Id.* (citing *U.S. v. Cronic*, 466 U.S. 648, 659 n.25 (1984))]. Respondent asserts that the TCCA's rejection of this claim was "neither contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact in light of the evidence before the state court" [Doc. 8 at 8].

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. Petitioner has the burden of showing both deficient performance and prejudice. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions, and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred under the circumstances of the particular case. *Strickland*, 466 U.S. at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. *Smith*, 528 U.S. at 285–86. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding

if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

When a petitioner raises an ineffective assistance of counsel claim in his § 2254 petition, the Court must review the state court's ruling on that claim under the highly deferential standard of the AEDPA. Thus, in order to succeed on a federal claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that the state court's ruling on his ineffective assistance of counsel claim was an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner raised this ground of ineffective assistance of counsel in his direct appeal proceedings in state court, but the TCCA denied relief as to this claim, holding:

> Next, the defendant argues that he received ineffective assistance of counsel at trial when counsel did not subpoena the third victim to trial or properly explain which of the defendant's prior convictions might be used to impeach him if he elected to testify. In order to prove ineffective assistance of counsel, the petitioner must prove that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In *Baxter v. Rose,* 523 S.W.2d 930, 936

(Tenn.1975), our supreme court established that the services rendered should be within the range of competence demanded of attorneys in criminal cases.

\* \* \*

With regard to counsel's failure to produce the attendance of Ms. Ford at trial, counsel testified that he attempted to locate and subpoena her. He said that he personally went to her supposed residence. He said that he spoke with her grandmother, but she did not have any information for where to find Ms. Ford. Counsel tried to locate the witness through her probation officer but discovered that she was not reporting at the time and that the officer did not know where to locate her. Trial counsel's efforts were reasonable under the circumstances, and the defendant has failed to show any deficiency in counsel's actions.

*State v. Cope*, 2010 WL 2025469, at \*6.

The Court concludes that the state courts' determination that Petitioner received the effective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). When a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The TCCA properly identified the applicable standard from *Strickland* and rejected Petitioner's ineffective-assistance claim, stating that "[t]rial counsel's efforts were reasonable under the circumstances, and the defendant has failed to show any deficiency in counsel's actions." *State v. Cope*, 2010 WL 2025469 at \*6. The state court's failure to spell out every step of its *Strickland* analysis does not affect the validity of its ruling under AEDPA. *See Harris v. Stovall*, 212 F.3d 940, 945 (6th Cir. 2000) ("Where a state court decides a constitutional issue . . . without extended discussion, a habeas court should then focus on the result of the state court's decision."). Ultimately, the TCCA found credible trial counsel's testimony that that he diligently

attempted to locate Ms. Ford by trying to contact her personally, as well as contacting her grandmother and probation officer—who were also unaware of Ms. Ford's whereabouts. Therefore, Petitioner has failed to show that the TCCA's holding that counsel satisfied *Strickland*'s deferential standard in trying to locate Ms. Ford was based upon an unreasonable determination of the facts. *See, e.g.*, *Williams v. Lafler*, 494 F. App'x 526, 531 (6th Cir. 2012) ("[W]e cannot say that trial counsel's 'failure' to procure two witnesses overcomes the strong presumption that he 'made all significant decisions in the exercise of reasonable professional judgment.'") (citing *Strickland*, 466 U.S. at 690).

Petitioner also claims that the TCCA's decision was contrary to *U.S. v. Cronic*, 466 U.S. 648 (1984), as "defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing" [Doc. 1-1 at 18]. In *Cronic*, the Supreme Court "held that courts may presume that a defendant has suffered unconstitutional prejudice if he 'is denied counsel at a critical stage of his trial.'" *Woods v. Donald*, 135 S.Ct. 1372, 1375 (2015) (quoting *Cronic*, 466 U.S. at 659 (holding the complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable")); *see also Bell v. Cone*, 535 U.S. 685, 696 (2002) (characterizing a "critical stage" as one that "held significant consequence for the accused"). However, the presumption set forth by the Supreme Court in *Cronic* "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell*, 535 U.S. at 697). A review of the trial transcripts shows that Petitioner's counsel made an opening statement, cross-examined witnesses, and made a closing argument, in which he challenged the prosecution's version of the events [Docs. 9-3, 9-4]. Therefore, the presumption of prejudice set forth under *Cronic* does not apply, and Petitioner has otherwise failed to demonstrate prejudice.

*See Smith v. Berghuis*, No. 2:12–cv–14322–LJM, 2015 WL 2236127, at *6 (E.D. Mich. May 12, 2015) (holding that habeas petitioner failed to show "a *Cronic*-level failure of trial counsel" for the failure to call an allegedly exculpatory witness).

Ultimately, Petitioner has failed to demonstrate that the state court's adjudication of this claim involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence before the state court. Therefore, Petitioner is not entitled to habeas relief on the basis of his ineffective assistance of counsel claim, and it will be **DISMISSED**.

### C.    Sufficiency of the Evidence Claims

Petitioner asserts that the evidence was insufficient to support his especially aggravated kidnapping, aggravated kidnapping, and false imprisonment convictions, claiming that the TCCA's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State trial" [Doc. 1-1 at 18–19]. Respondent first contends that any potential claim that the evidence was insufficient to support Petitioner's false imprisonment conviction is procedurally defaulted, as Petitioner failed to assert this claim in his previous challenge on direct appeal [Doc. 8 at 13].

On direct appeal to the TCCA, Petitioner claimed that the evidence was insufficient to support his especially aggravated kidnapping and aggravated kidnapping convictions [Doc. 9-7 at 21–27]. Specifically, with respect to the especially aggravated kidnapping conviction, Petitioner "concedes that he is guilty of false imprisonment and simple assault" [*Id.* at 25], but claims that "the jury wrongfully applied the shield element found in Tenn. Code Ann. § 39-13-305(a)(3)" [*Id.* at 23]. If a § 2254 petitioner failed to raise a claim on appeal and thereby violated a state procedural rule, "that claim is subject to procedural default and will not be reviewed by federal courts unless

the petitioner demonstrates cause and prejudice for the default." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). As Petitioner as barred from asserting this claim under Tennessee Code Annotated § 40–30–102(c), and has not attempted to show cause for failing to present this claim to the state courts, any potential claim that the evidence was insufficient to support Petitioner's false imprisonment conviction is procedurally defaulted, and will be **DISMISSED**.

Petitioner thus fairly presented claims that the evidence was insufficient to support his convictions for especially aggravated kidnapping and aggravated kidnapping. The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979) provides the controlling rule for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for claims of insufficient evidence), *superseded on other grounds as recognized by Parker v. Matthews*, 567 U.S. 37, 42 n.1 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. 443 U.S. at 319.

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting *Jackson*,

443 U.S. at 326). Further, additional deference is owed to the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *See Cavazos*, 565 U.S. at 7 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

Respondent contends that a "rational juror could . . . find that [Petitioner] was the perpetrator responsible for the offenses of especially aggravated kidnapping and aggravating kidnapping," and that Petitioner has failed to demonstrate that the TCCA's "adjudication of his [remaining] claims involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence before the state court" [Doc. 8 at 17]. Petitioner presented these claims on direct appeal, and the TCCA analyzed them as follows:

> The defendant argues that the evidence was insufficient to support his convictions for especially aggravated kidnapping and aggravated kidnapping. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer,* 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

> In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins,* 102 S.W.3d 578, 581 (Tenn. 2003).

> The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues

raised by the evidence. *Id.* In *State v. Grace,* the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982); *Grace,* 493 S.W.2d at 476.

First, the defendant argues that "the jury wrongly applied the shield element" of especially aggravated kidnapping because the evidence did not show that he was using the victim to shield himself from imminent death or serious injury. Specifically, he argues that he was not shielded from anything because the officer's weapons were not trained on him. Especially aggravated kidnapping is defined as false imprisonment or "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty," committed to hold the victim as a shield or hostage. T.C.A. § 39–13–305(a)(3) (2006). The defendant emerged from the apartment clutching Callahan in a choke hold, positioning her between himself and the responding officers. The first officer at the scene testified that he had his weapon drawn when the defendant exited the apartment and thought the defendant was armed due to the cast on his hand. The evidence at trial is consistent with a finding that the defendant held Callahan between himself and the officers until he surrendered. From the evidence presented, a reasonable jury could conclude that the defendant used the victim to shield himself from the officers. The evidence is sufficient to support this conviction for especially aggravated kidnapping.

Next, the defendant argues that the evidence is insufficient to support his conviction for the aggravated kidnapping of the second victim, Ms. Callahan. Specifically, he contends that the evidence did not sufficiently demonstrate that he substantially interfered with the second victim's liberty or that she suffered bodily injury. Aggravated kidnapping, as applicable here, is defined as "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty" and "with the intent to inflict serious bodily injury on or to terrorize the victim or another" or where the victim "suffers bodily injury." T.C.A. § 39–13–302(a), 304 (2006).

The evidence at trial demonstrated that the defendant grabbed Callahan by her hair, shirt, and pants. She testified that she was afraid of the defendant, who confined her against her will and that he hurt her. The defendant attempted to remove her clothes and force her to engage in sex with him and with the other victim. Finally, he threatened to kill her and to make it so "nobody will ever look at [her] again." The record reflects that the defendant terrorized Callahan, which was sufficient to satisfy the definition of aggravated kidnapping under the statute.

*State v. Cope*, 2010 WL 2025469, at *3–5.

In Petitioner's case, the TCCA recited the proper sufficiency of the evidence standard, and accurately summarized the evidence presented at trial. The state court's failure to cite *Jackson* or other Supreme Court precedent does not render the TCAA's evidence-sufficiency determination an unreasonable application of *Jackson*. *See Harrison v. Richter*, 562 U.S. 86, 100 (2011) (holding a state court's decision need not rely on or cite to Supreme Court precedent to pass muster under § 2254(d)); *see also Fears v. Bagley*, 462 F. App'x 565, 579 (6th Cir. 2012) ("The state court need not identify federal law in its decision to be given deference.") (internal quotation marks and citations omitted). Further, the TCCA conducted its review under Rule 13(e) of the Tennessee Rules of Appellate Procedure, which incorporates the sufficiency of evidence standard provided in *Jackson*. *See Bates v. Carlton,* No. 2:09–CV–120, 2012 WL 3524901, at *6 (E.D. Tenn. Aug. 14, 2012). Therefore, because the state court, in analyzing the insufficient-evidence claim, applied the principles in *Jackson*—the relevant Supreme Court precedent—this Court can grant relief only if Petitioner demonstrates that the application itself was unreasonable, or that the decision was based on an unreasonable factual determination. *See Cavazos v. Smith*, 565 U.S. 1, 7 (2011)

Ultimately, the Court finds no error in the state court's application of the standard in *Jackson* to the facts from Petitioner's trial, or in its ultimate conclusion that the evidence, viewed in the light most favorable to the government, supported the jury's verdict. Petitioner claims that, with respect to the especially aggravated kidnapping conviction, the jury wrongly applied the shield element of Tennessee Code Annotated § 39-13-305(a)(3) because the evidence did not show that he was using the victim to shield himself from imminent death or serious injury [Doc 9-7 at 23]. However, the TCCA properly examined Tennessee Code Annotated § 39-13-305(a)(3), and found that "the evidence at trial is consistent with a finding that [Petitioner] held Callahan between himself and the officers until he surrendered." *State v. Cope*, 2010 WL 2025469, at *4.

Petitioner also claims that, with respect to his aggravated kidnapping conviction, "the evidence at trial does not show that he substantially interfered with [the victim's] liberty" [Doc. 9-7 at 26]. The TCCA held that "[t]he evidence at trial demonstrated that [Petitioner] grabbed [the victim] by her hair, shirt, and pants," and that the victim testified that she was afraid of Petitioner because he threatened to kill her and attempted to force her to engage in sex with him and the other victim. *State v. Cope*, 2010 WL 2025469, at *5. Petitioner has thus failed to set forth any valid reason that the Court should decline to give deference to either the state court's resolution of these claims for relief or the jury's verdict itself.

Accordingly, because this Court concludes that the state court's resolution of Petitioner's claims of insufficiency of the evidence were neither contrary to or an unreasonable application of clearly established federal law, nor were they based on an unreasonable determination of facts based on the evidence, Petitioner is not entitled to habeas relief on the basis of his sufficiency of the evidence claims, and they will be **DISMISSED**.

### D.    *Brady* Claim

Petitioner contends that the State withheld material, exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1964) [Doc. 1 at 10]. Specifically, Petitioner claims that the prosecution failed to disclose that one of the victims, Debbie Callahan, served as a confidential informant with the Kingsport Police Department several months before his criminal trial [*Id.* at 10]. Respondent contends that the state court's rejection of Petitioner's *Brady* claim was not an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact [Doc. 8 at 17].

The Due Process Clause of the Fourteenth Amendment requires that the state disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the

punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady*, 373 U.S. at 97). "Even in the absence of a specific request, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Trombetta*, 467 U.S. at 485 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

To establish a *Brady* claim, a petitioner must show that the state withheld exculpatory evidence material to either the petitioner's guilt or punishment. *Brady,* 373 U.S. at 87. The Supreme Court has articulated three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia,* 547 U.S. 867, 870 (2006) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987) (internal quotation marks omitted).

Petitioner filed a petition for a writ of error coram nobis on April 15, 2013, claiming that there was newly discovered evidence in his case—that Ms. Callahan was working as a paid confidential informant for the State, and that "the police informed his trial counsel that there was no exculpatory evidence in his case." *See Tracy L. Cope v. State*, No. E2013-02590-CCA-R3-ECN, 2014 WL 4161480, at *3 (Tenn. Crim. App. Aug. 21, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015). Petitioner presented this claim on appeal to the TCCA of the coram nobis court's dismissal of his petition, and the TCCA analyzed it as follows:

> The Petitioner raised as "newly discovered evidence" that Ms. Callahan was
> working as a confidential informant for the State. Our Supreme Court outlined the

procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

*State v. Vasques,* 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceeding might have been different.'" *Id.* (quotations omitted). There are, however, limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. *See, e.g., State v. Hart,* 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

> [a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

*Id.* (citations omitted). We conclude that the Petitioner has not proven that there is a reasonable basis to conclude that, had the jury known that Ms. Callahan was working as a confidential informant at the time of trial, the result of the proceedings would have been different. This evidence could have been used to impeach Ms. Callahan, showing her bias, but it would serve no other purpose. Therefore, the evidence does not justify the grant of the petition. *See id.* The Petitioner's remaining claims do not allege newly discovered evidence and are not proper grounds for a writ of error coram nobis. As such, we conclude that the trial court did not err when it found that due process considerations did not require a tolling of the statute of limitations and dismissed the Petitioner's writ of error coram nobis. The Petitioner is not entitled to relief.

*Cope v. State*, 2014 WL 4161480, at *7–8.

In the context of impeachment evidence, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, the nondisclosure of evidence affecting credibility

falls within" the *Brady* rule requiring a new trial. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Evidence has been deemed material for *Brady* purposes "if the witness whose credibility is attacked provides the only evidence linking the defendant to the crime or where the impact of the evidence on the witness's credibility would have undermined a critical element of the prosecution's case." *Hill v. Mitchell*, No. 1:98-cv-452, 2012 WL 995280, at *5 (S.D. Ohio Mar. 23, 2012) (citing *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996)); *see, e.g.*, *Robinson v. Mills*, 592 F.3d 730, 736–37 (6th Cir. 2010) (holding "the suppressed evidence of Sims' status as a [confidential informant] is material under *Brady* because Sims was the State's star witness and only her testimony contradicted or undermined Robinson's assertion that he killed Irwin in self-defense").

However, in the present case, the non-disclosure of Ms. Callahan's status as a confidential informant does not constitute a *Brady* violation, as her testimony was not "determinative of guilt or innocence" in Petitioner's case. *Giglio*, 405 U.S. at 154. The TCCA upheld the dismissal of Petitioner's *Brady* claim and the denial of the petition for a writ of error coram nobis, holding that Petitioner had failed to prove that the alleged exculpatory evidence was material. *Cope v. State*, 2014 WL 4161480, at *7–8. Petitioner claimed in his petition for a writ of error coram nobis that "if the jury had been made aware of Ms. Callahan's informant status during her cross examination[,] that fact would have affected the credibility of Ms. Callahan in the eyes of the jury." *Id.* at *4. However, the coram nobis trial court's denial of relief, which the TCCA affirmed, was based on the fact that "[a] review of the trial transcript . . . reveals that during cross examination . . . Ms. Callahan was never confronted with the allegation that she had given one version of the incident before trial and another version of the incident at trial." *Id.* at *5. The prosecution also

presented testimony from two police officers at the scene regarding the alleged kidnapping in order to establish Petitioner's guilt [Doc. 9-3 at 115–157].

Further, Ms. Callahan was thoroughly cross-examined by Petitioner's counsel about her version of the events [Doc. 9-3 at 103–113]. The Sixth Circuit has held that, "where undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Williams v. Bagley*, 380 F.3d 932, 977 (quoting *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000)); *see, e.g.*, *Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 526 (N.D. Ohio Dec. 12, 2014) (holding state's failure to provide evidence relating to witness's work as confidential informant did not violate *Brady*).

Ultimately, the Court finds that Petitioner has not shown that the decision of the TCCA "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on the basis of this claim, and his *Brady* claim will be **DISMISSED**.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that none of Petitioner's claims warrant issuance of a writ. Therefore, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED**, Petitioner's status motion [Doc. 18] will be **DENIED as moot**, and this action will be **DISMISSED**.

## VI.    CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a COA, should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. Specifically, as to Petitioner's due process claim and claim that the evidence was insufficient to sustain his false imprisonment conviction, jurists of reason would not debate the Court's finding that Petitioner did not fairly present these claims to the TCCA in a manner that rendered consideration of their merits likely and that the claims are therefore procedurally defaulted. Further, as to the claims that Petitioner did not procedurally default, Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

27